Filed: 6/17/2026 10:59 AM
Clerk
DeKalb County, Indiana

STATE OF INDIANA ) IN THE DEKALB SUPERIOR COURT
) SS:
COUNTY OF DEKALB ) CAUSE NO. 17D02-2606-CT-000015

SCOTT JAQUA,
Plaintiff,
v.
EDW C. LEVY CO., d/b/a BUTLER MILL SERVICES,
Defendant.

## COMPLAINT

Plaintiff alleges against Defendant as follows:

1. The Plaintiff is Scott Jaqua, a qualified employee of Defendant who, at all times material to this Complaint, performed within the reasonable expectations of his employer. Plaintiff alleges he was retaliated against for utilizing time off work to tend to his own serious medical condition in violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), or for suffering a workplace injury that entitled him to Workers Compensation benefits in violation of the laws and public policies of the State of Indiana.[1]
2. The Defendant is EDW C. Levy Co., d/b/a Butler Mill Services, a company doing business at 4506 County Road 59, Butler, IN 46721. Defendant's principal address is 9300 Dix Avenue, Dearborn, MI 48120, and its registered agent is CT Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204. Defendant is an "employer" for the purposes of the FMLA and the laws and public policies of the State of Indiana.

1 See *Frampton v. Central Indiana Gas Co.*, 297. N.E.2d 425 (Ind. 1973)

3. Plaintiff worked for Defendant from December 29, 2021, until his wrongful termination on or about December 4, 2025. Plaintiff worked for Defendant as a pot hauler.
4. On or about August 14, 2025, Plaintiff was approved to utilize intermittent FMLA to tend to his serious medical condition. On the date of his termination, Plaintiff had utilized three and one-half days off work, the first of which was August 7, 2025, that were FMLA eligible. He further utilized half a day on August 31, 2025, and two full days on September 18 and October 10, 2025.
5. Plaintiff's intermittent FMLA approval indicated the approved absence pattern to be up to five occurrences every month, lasting one day per occurrence.
6. Prior to applying for and being approved for FMLA intermittent leave, Plaintiff averaged (from May 1, 2025, through August 14, 2025) $2,685 per week in wages. Plaintiff was an hourly employee, at $34.00 per hour with a $2.00 per hour shift premium.
7. After applying for and being approved for intermittent FMLA coverage, Plaintiff's schedule was reduced (Beginning August 15, 2025), and his average weekly pay dropped (from August 21, 2025, through December 4, 2025) to approximately $1,784 per week. To further illustrate the reduction in pay, from May 1, 2025, through August 14, 2025, there were only six (6) weeks that Plaintiff's weekly pay was below $1,800. After the FMLA approval, from August 21, 2025, through Plaintiff's termination on December 4, 2025, there were eleven (11) weeks in which his weekly pay fell short of $1,800.
8. After Plaintiff's second FMLA approved absence, team lead Josh Hunt announced in the breakroom to multiple witnesses that Plaintiff was "becoming a problem."
9. During Plaintiff's employment with Defendant, if he needed to call off work, Plaintiff

routinely texted his supervisor to notify him of Plaintiff's anticipated absence. Further, if Plaintiff ran out of work while on shift, he would text his supervisor to notify him of his intent to leave early.

10. On December 1, 2025, Plaintiff suffered an on-the-job back injury that did not become clear as an injury until the following day, December 2, 2025. A couple hours into his shift, Plaintiff notified his supervisor, Kyle Glass, that his back was hurt, and after a few texts back and forth, it was determined that the injury warranted a call to Axiom, and the injury was reported as required.

11. Later, on December 2, 2025, after reporting the injury to Glass and Axiom, Plaintiff ran out of work to do and was still experiencing pain, so he texted Glass that he was finished and wished to go home early. Glass instructed Plaintiff to go operate a machine for which Plaintiff had insufficient training to run. Plaintiff then indicated there were already two people performing work on the machine he was directed to, that by the time he got the machine up and running there would not be time to get much done, and that he was leaving work and would accept a point if necessary.

12. By this time, Plaintiff was two hours away from the end of his shift, and left work after the text exchange. At no time did Glass indicate Plaintiff could not leave work, and Plaintiff did not believe he would be subject to discipline as he was experiencing pain due to a workplace injury and had appropriately communicated his early departure.

13. On December 3, 2025, Plaintiff was notified he was suspended and was not to return to the job site.

14. On December 4, 2025, Plaintiff was notified that he was terminated. The reasons

provided were that Plaintiff left early, and that texting the intention to leave was not the proper procedure.

15. However, Plaintiff had routinely utilized text messaging to call off or leave early and had never been written up or notified that he was not using "proper procedures." In fact, at the time of termination, Plaintiff had no disciplinary actions in his record and had no known attendance issues.
16. Plaintiff alleges that the proffered reasons for his termination are false and pretextual, and in reality, he was subjected to retaliation for utilizing the FMLA to tend to his own serious medical condition and/or for suffering a workplace injury that entitled him to utilize Workers Compensation insurance.
17. The Defendant's retaliatory conduct was the direct and proximate cause of Plaintiff suffering the loss of his job and job-related benefits, including income, and subjected him to emotional distress, humiliation, embarrassment, and other damages and injuries. Plaintiff seeks compensatory damages, including reasonable attorney fees and costs.
18. Furthermore, Defendant's discriminatory and retaliatory behavior was knowing, willful, intentional, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, warranting an imposition of punitive and/or liquidated damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, punitive damages, liquidated damages, reasonable attorney fees and costs, and for all other just and proper relief.

**JURY DEMAND**

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CLOSE & HITCHCOCK, LLC**

/s/ Jennifer Hitchcock
Jennifer L. Hitchcock, #34635-02
116 E. Berry Street, Suite 300
Fort Wayne, IN 46802
Telephone: (260) 408-6818
Facsimile: (260) 498-2655
E-mail: Jennifer@closehitchcock.com
*Attorney for Plaintiff*